MERRITT, Circuit Judge,
dissenting.
I agree with Judge Rogers’ dissenting opinion that the Fair Sentencing Act displays a congressional intent for the U.S. Sentencing Commission to draft a new set of greatly reduced crack cocaine guidelines to be applied both to new and old crack cocaine offenses. This remedial intent, as set out in my original panel opinion in this case, United States v. Blewett, 719 F.3d 482 (6th Cir. May 17, 2013), includes mandatory minimum sentences in order to correct the wrongs of the past. Congress specifically repealed the old mandatory mínimums as excessive and unfair in order to “restore fairness.” It replaced the old excessive sentences with greatly reduced mandatory minimum sentences. Congress wanted change, not the status quo. Congress knew that a large number of the long sentences to be reviewed under § 3582(c)(2) were mandatory and that most of the defendants were African-American.[1]
*670 I agree also with the dissent that the intent behind this congressional action to “restore fairness” is inconsistent with enforcing a “no-change” sentencing policy based on a doctrine of “finality” that the majority repeatedly relies on to deny relief throughout its opinion. The majority is mistaken in suggesting that it is the “government” that wants “to avoid disrupting the finality” of the old sentences. It is not Congress that has suggested “finality” as the governing policy. Only the Department of Justice as a party to this action, and the court itself, take that position. The “finality” of the mandatory sentences in this case is not a “default” position or the norm as the majority mistakenly asserts. Rather the opposite is true. The cases are to be further reviewed under § 3582(c)(2) to “restore fairness” and remedy the wrongs of the past.
Both the National Association of Criminal Defense Lawyers and the NAACP Legal Defense and Educational Fund, Inc. (“LDF”) have filed amicus briefs arguing that the position of the Department of Justice in this case, if upheld, creates a sentencing system so disproportionate, irrational and racially biased that it violates the proportionality requirement of the Eighth Amendment and the equal protection requirements of the Fifth and Fourteenth Amendments.
Once again the majority answers these arguments with its “strong-interest-in-finality” policy, attributing this reason to Congress. But it is not Congress that has created this situation. It intended, as Judge Rogers’ opinion makes clear, to greatly reduce such sentences. It is the court itself in its misunderstanding of congressional intent that has introduced irrationality and disproportionality into the system that Congress intended to correct.
It is not Congress’ but this court’s decision to create the vast disproportionality in sentencing when it denies authority to re *671 duce the Blewetts’ mandatory sentences from ten years to zero years, as provided in the new Act. The court visits that disparity on a prison population that is ninety percent African-American. Both the Department of Justice and this court know the facts, the degree of disproportionality, the irrationality of the disparity, and the racial makeup of the prison population that must suffer the consequences. It chooses to disregard these facts in favor of its overriding policy of “finality.”
I am convinced by the argument of the National Association of Criminal Defense Lawyers on the disproportionality and irrationality of the position of the Department of Justice, now adopted by our court. In its amicus brief it argues:
Unless the government can put forward legitimate penological justifications for refusing the Blewetts (and similar less-serious, lower-quantity crack offenders) the opportunity to apply for sentence modifications under 18 U.S.C. § 3582(c)(2) based on the FSA’s more lenient crack sentencing provisions, their sentences are “by their nature disproportionate to the offense,” Graham, 130 S.Ct. at 2028, and a purposeless mandate that they serve out the full duration of now-repealed, excessive pre-FSA mandatory minimum sentences would result in significant and enduring Eighth Amendment violations. [Citing Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 2028, 176 L.Ed.2d 825 (2010).]
Amicus Brief, National Association of Criminal Defense Lawyers, p. 13.
The amicus brief of the LDF extends the irrationality and disproportionality argument to take into account the consequences for African-Americans under the Equal Protection Clause. Relying on numerous Sentencing Commission reports like the September 13, 2013, report quoted in footnote 1 above, the LDF argues throughout its amicus brief that the dis-proportionality in crack sentencing falls primarily on African-American defendants. It argues that the purpose of Congress was to remedy the discrimination, not to suppress it or cover it up by foreclosing the opportunity for sentence modification under § 3582(c)(2). I agree with the LDF argument that the majority’s failure to allow review of the old mandatory sentences simply perpetuates the racial discrimination that the FSA was designed to change. These mandatory sentences are in some instances as long as life imprisonment. The “no-change” policy of the Department of Justice and our court in denying review has grave consequences for many thousands of imprisoned African-Americans that deserve to be released earlier in light of the new statute and guidelines and the grossly excessive sentences of the past that practically all observers now recognize.

. On September 18, 2013, the Sentencing Commission reported some of its findings on the consequences of applying the new mandatory mínimums to all defendants:
The Commission has determined that, should the mandatory minimum penalty provisions of the FSA be made fully retroactive, 8,829 offenders would likely be eligible for a sentence reduction, with an average reduction of 53 months per offender. That would result in an estimated total savings of 37,400 bed years over a period of several
years and to [sic] significant cost savings. The Commission estimates that 87.7 percent of the inmates eligible for a sentence reduction would be Black.
Statement of Judge Patti B. Saris, Chair, United States Sentencing Comm’n for the Hearing on "Reevaluating the Effectiveness of Federal Mandatory Minimum Sentences” before the Comm, on the Judiciary, United States Senate, Sept. 18, 2013 (footnotes omitted). At $30,000 a "bed year,” the budgetary savings would exceed $1.1 billion. The *670 change would also eliminate much of the racial discrimination in sentencing that the legislative history of the FSA acknowledged had been a part of the crack/powder cocaine sentencing disparity.
Here is a small but representative sample of the many statements by members of Congress concerning the purpose of the Fair Sentencing Act:
155 Cong. Rec. S10491 (daily ed. Oct. 15, 2009) (statement of Sen. Dick Durbin, Assistant Senate Majority Leader) ("Vice President Joe Biden, one of the authors of the legislation creating this disparity in sentencing, has said: 'Each of the myths upon which we based the disparity has since been dispelled or altered.’ ”); 156 Cong. Rec. H6202 (daily ed. July 28, 2010) (statement of Rep. Robert C. "Bobby” Scott, Chairman of the House Judiciary Subcommittee on Crime, Terrorism and Homeland Security) ("We are not blaming anybody for what happened in 1986, but we have had years of experience and have determined that there is no justification for the 100-to-1 ratio.”); 156 Cong. Rec. H6202 (daily ed. July 28, 2010) (Statement of Rep. Daniel E. Lungren) ("We initially came out of committee with a 20-to-l ratio. By the time we finished on the floor, it was 100-to-l. We didn’t really have an evidentiary basis for it, but that's what we did, thinking we were doing the right thing at the time.”);156 Cong. Rec. S1682 (daily ed. Mar. 17, 2010) (statement of Sen. Patrick Leahy) ("The racial imbalance that has resulted from the cocaine sentencing disparity disparages the Constitution’s promise of equal treatment for all Americans.”); 156 Cong. Rec. H6198 (daily ed. July 28, 2010) (statement of Rep. James E. Clyburn, House Majority Whip) (“The current drug sentencing policy is the single greatest cause of the record levels of incarceration in our country. One in every 31 Americans is in prison or on parole or on probation, including one in 11 African Americans. This is unjust and runs contrary to our fundamental principles of equal protection under the law.”); 156 Cong. Rec. H6203 (daily ed. July 28, 2010) (statement of Rep. Steny Hoyer) (“The 100-to-l disparity is counterproductive and unjust.”).